**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| FRANKENMUTH MUTUAL INSURANCE COMPANY, | Case No. 5:17CV2013 |
| | JUDGE JOHN R. ADAMS |
| Plaintiff, | |
| v. | |
| | **ORDER** |
| OHIO EDISON COMPANY, | |
| Defendant. | |

This matter is before the Court on the motion of Plaintiff Frankenmuth Mutual Insurance Company ("Frankenmuth") to exclude testimony by Defendant Ohio Edison Company's ("Ohio Edison") expert, Robert Kimmick (Doc. 21). The Court has considered the motion and the opposition thereto. For the following reasons, the motion is DENIED.

**I.     BACKGROUND**

This matter arises from a fire that occurred on December 12, 2016 at the Everett building located at 39 East Market Street, Akron, Ohio (the "Everett building"). The fire damaged both the Everett building and the adjacent Hermes building located at 43 East Market Street (the "Hermes building"). Both the Everett building and the Hermes building are owned by Pointe View, Ltd. ("Pointe View") and insured by Frankenmuth. *See* Amended Compl. ¶¶ 6-7. Ohio Edison supplied electricity and electrical services to both the Everett building and the Hermes building. *Id.* at ¶¶ 8-9.

The fire originated from within a wall-mounted power tap box located in the basement electrical room of the Everett building. *See id.* at ¶ 11. The power tap box contained the Ohio Edison conduit and secondary power supply lines (also known as phase conductors) which were

1

connected inside the power tap box to wiring which then ran from the power tap box to various connections in the basement electrical room in order to supply electric power to the Everett building. *See id.* at ¶ 15. The post fire loss investigation revealed that the fire was caused by the failure of the power supply line wiring and connections within the power tap box.

Indeed, it is uncontested that the Everett building fire originated in the area of the power tap box in the southwest corner of the building's basement. Also, Frankenmuth and Ohio Edison do not dispute that the fire was caused by an electrical arcing event. The parties do not dispute that water intrusion was the initiating event. It is likewise uncontested that the basement electric room showed significant signs of water damage over time  The only issue in dispute between the parties' experts regarding the cause of the fire is whether the fire was more likely caused by a physical change to or around the box caused by water emanating from the basement walls, ceiling and overall environment (as Kimmick concludes), or water that had run into the box from conduits outside the building, causing the power supply line wiring and connections in the power tap box to become worn and frayed, resulting in an electrical arcing fault and the ensuing fire (as Frankenmuth contends).

Frankenmuth now seeks subrogated recovery against Ohio Edison for the damages sustained by its insured Pointe View, for which Frankenmuth paid Pointe View pursuant to the insurance policy Frankenmuth issued to Pointe View. *See id*. at ¶¶ 25-28. Frankenmuth pursues recovery on the alleged basis that Ohio Edison failed to properly investigate, inspect, address, repair and replace the power tap box, and the power supply wiring and connections within the power tap box, when Ohio Edison was called to the Everett building and went into the basement electrical room during the week prior to the fire in response to reports of smoke and flickering

lights. *See id.* at ¶¶ 16-24. Frankenmuth argues that, in doing so, Ohio Edison failed to recognize and address the conditions which led to the electrical fault and subsequent fire. *See id.*

Frankenmuth now seeks to exclude the testimony of Ohio Edison's expert, Kimmick, under Federal Rule of Evidence 702. The Court turns to the merits of that motion.

## II. LEGAL STANDARD

Expert testimony is admissible if it meets the requirements of Federal Rule of Evidence 702. The rule states:

> If a scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The Sixth Circuit has interpreted Rule 702 to impose three requirements: "First, the witness must be qualified by knowledge, skill, experience, training, or education. Second, the testimony must be relevant, meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue. Third, the testimony must be reliable." *U.S. ex rel. Tenn. Valley Auth. v. 1.72 Acres of Land in Tenn.*, 821 F.3d 742, 749 (6th Cir. 2016) (quoting *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528-29 (6th Cir. 2008)) (internal quotations omitted). Furthermore, "rejection of expert testimony is the exception, rather than the rule." *Id.*

## III. DISCUSSION

Kimmick has authored a written report and testified at deposition. (Exs. 23-9; 23-10.) Kimmick's opinions address three main issues: (1) the origin and cause of the fire, (2) alleged fire and electric code violations, and (3) Ohio Edison's adherence to electric utility company standards of care. (*See id.*) Kimmick concluded that the most likely cause of the fire was a

3

physical impingement of conductors caused by movement of the junction box, which movement itself was caused by the rotting of the plywood backing onto which the box was attached. (*See id.*) Kimmick opined that the water damage did not come from the manhole or the conduit line, but from the foundation of the Everett building and dripping from the ceiling. (*See id.*) Kimmick also opines that Frankenmuth's insured, Pointe View, allegedly violated fire and electric code provisions, thereby contributing to the spread of the fire and preventing earlier detection of the problems with the power tap box and the wiring and connections within it. (*See id.*) According to Kimmick, Pointe View did not provide sprinkler protection above the suspended ceiling in the Everett building electrical room, and did not install fire stops in the pipe chase within the basement electrical room. (*See id.*)

Frankenmuth first argues that Kimmick's testimony should be precluded under Rule 702 because he is not qualified to offer expert opinions on any of the issues for which he offers them. (Doc. 21-1, p. 10.) Specifically, Frankenmuth argues that: (1) Kimmick was not a certified fire and explosive investigator when he conducted his investigation for purposes of determining the origin and cause of the fire; (2) Kimmick has never been qualified, and has never testified, as a fire origin and cause expert; (3) Kimmick is not a fire protection engineer and has only participated in the design/modification of one fire protection system; and (4) Kimmick has no training, background, or experience working for any electrical utility. The Court disagrees that these issues prevent Kimmick from qualifying as an expert under Rule 702.

The pertinent question regarding Kimmick's qualifications is whether his testimony "is about matters growing naturally and directly out of research [he has] conducted independent of the litigation[.]" *Buck v. Ford Motor Co.*, 810 F. Supp. 2d 815, 842 (N.D. Ohio 2011) (finding licensed civil engineer with work experience in highway and traffic engineering, accident

4

reconstruction, and human driver error was qualified to testify about automotive gas pedal error). Here, Kimmick has both a bachelor's and master's degree in electrical engineering, which qualifies him to investigate an electrical fire. (Doc. 23-1, p. 1.) Further, Kimmick is a registered Professional Engineer in Ohio, Pennsylvania, West Virginia, South Carolina and Kansas. (*Id.*) During his career as an electrical engineer, Kimmick has led the design of several fire protection systems. (Kimmick Dep. at 54:7-58:7.) He was in the process of acquiring his official Certified Fire and Explosion Investigator designation around the time the Everett building investigation began, and has now acquired it. Kimmick taught a course on electrical evidence in fire investigations for the Pennsylvania State Police. (Doc. 23-1, p. 3.) He has studied the relevant National Fire Protection Association sections concerning fire protection systems. (Doc. 23, p. 3.)

It is evident that Kimmick's testimony in this matter is rooted in his education, experience, and research outside of this litigation. Accordingly, he is not precluded from offering expert testimony under Rule 702. Frankenmuth's argument that Kimmick's experience must include prior instances of giving expert testimony is not supported in the case law, and is not well-taken. Kimmick's background as an electrical engineer, and his experience inspecting and engineering fire protection systems to meet code qualifies him as an expert in this case. (Kimmick Dep. at 54:12-55:3.)

Moreover, it is undeniable that Kimmick's testimony is relevant as is required under Rule 702. An expert's testimony is relevant if it "will help the trier of fact to understand the evidence or determine a fact issue." *In re Ford Motor Co. Spark Plug and 3-Value Engine Prods. Liab. Litig.*, 98 F. Supp. 3d 919, 922 (N.D. Ohio 2014). The cause of the basement fire is a fact at issue in the case. How the fire developed, and how the prospective damage allegedly went unmitigated by the building's fire system also is an issue. Kimmick's expert testimony will help

the fact-finder understand the complex circumstances which led to the electrical fire. Accordingly, Kimmick's testimony is relevant.

Frankenmuth also argues that Kimmick's conclusions are not reliable because they are not based on sufficient facts or data. (Doc. 21-1, p. 14-15.) Although the basis for this contention is somewhat unclear, it appears that Frankenmuth faults Kimmick at least in part for allegedly unreliable metallurgical testing and that he allegedly did not "interview key witnesses or identify any documents in support of his opinion about alleged code violations." (*Id.*, p. 8.) Neither argument is persuasive.

First, in addition to relying on metallurgical tests to reach his conclusions regarding the cause of the fire, Kimmick appears to have relied on much of the same facts and data that Frankenmuth's expert relied on. These include inspections and examinations at the Everett building fire scene, inspection of debris removed from the scene, review of documents and photographs exchanged in discovery, and the depositions in the case.

Kimmick also explained the bases for his criticism of Plaintiff's experts' conclusions that water invaded the electrical tap box from outside pipes that fed the conductors to the building. He observed that a foam seal was evident on the manhole end of the conduits. He noted the lack of corrosion on the floor of the tap box (which he claims would have occurred had condensation leaked through the manhole and underground conduits). He noted the remnants of foam sealing placed on the building side. He explained how rust on numerous pieces of equipment was consistent with water coming from other sources. He described the water-rotted plywood piece that held the tap box in place and the corroded anchors from the tap box. (Doc. 21-9, pp. 6-9.) Thus, Kimmick's conclusions are based on a number sufficient facts to be admitted as expert testimony under Federal Rule of Evidence 702.

Moreover, contrary to Frankenmuth's apparent assertion, Kimmick reviewed the Akron Fire Department incident report and accompanying photographs, along with transcripts of the depositions of various witnesses. (*Id.* at pp. 1-2.) It is untrue that he did not review any document from the Akron Fire Department. Furthermore, he explicitly noted that he included testimony from the witnesses in his analysis.

Likewise, Kimmick's observations about deficiencies in the building's fire protection system are based upon a straightforward reading of the relevant industry standards. This is a reading an engineer could make.

Similarly, Kimmick's testimony regarding the lack of a standard in the electrical utility industry for how to respond to a customer service call appears to be based in his knowledge of the relevant National Electric Code, National Electric Safety Code, and National Fire Protection Association standards. Kimmick can testify regarding whether any of the codes or standards prescribe an action to be taken by a utility when a customer calls with a report of smoke from the day before.

Kimmick's report and conclusions are not excludable under Rule 702 as unreliable. They are based on sufficient facts and data obtained from his expert observations and knowledge, Fire Department records, and sworn testimony of several witnesses.

Frankenmuth is free to cross-examine Kimmick regarding any perceived deficiencies in his expertise, investigation, or analysis. These alleged deficiencies bear on the weight of Kimmick's testimony. However, they do not preclude Kimmick from offering expert testimony at the trial of this matter. For the reasons discussed, Kimmick may testify in this case as an expert qualified under Federal Rule of Evidence 702.

## IV.   CONCLUSION

For the reasons stated, Frankenmuth's motion to exclude expert testimony (Doc. 21) is DENIED. Ohio Edison's expert, Robert Kimmick, is qualified to testify under Federal Rule of Evidence 702.

**IT IS SO ORDERED.**

       s/John R. Adam_____
JOHN R. ADAMS
UNITED STATES DISTRICT JUDGE

**DATED**: \_\_\_\_10/4/2018_____