**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FRANKENMUTH MUTUAL INSURANCE COMPANY, | ) ) ) | Case No. 5:17CV2013 |
| | ) | JUDGE JOHN R. ADAMS |
| Plaintiff, | ) | |
| v. | ) ) | **ORDER** |
| OHIO EDISON COMPANY, | ) ) | |
| Defendant. | ) | |

This matter is before the Court on the motion in limine of Defendant Ohio Edison Company ("Ohio Edison") to exclude evidence of electrical repairs subsequent to the fire at issue in this matter. (Doc. 25.) Plaintiff Frankenmuth Insurance Company ("Frankenmuth") has opposed the motion. (Doc. 29.) The Court has considered the motion and the opposition thereto. For the following reasons, the motion is DENIED IN PART and GRANTED IN PART.

**I.    BACKGROUND**

This matter arises from a fire that occurred on December 12, 2016 at the Everett Building located at 39 East Market Street, Akron, Ohio (the "Everett Building"). The fire damaged both the Everett Building and the adjacent Hermes Building located at 43 East Market Street (the "Hermes Building"). Both the Everett Building and the Hermes Building are owned by Pointe View, Ltd. ("Pointe View") and insured by Frankenmuth. *See* Amended Compl. ¶¶ 6-7. Ohio Edison supplied electricity and electrical services to both the Everett Building and the Hermes Building. *Id.* at ¶¶ 8-9.

The fire originated from within a wall-mounted power tap box or junction box located in the basement electrical room of the Everett Building, where conductors from outside the Everett

1

Building entered the building. *See id.* at ¶ 11. The junction box contained a connection where conductors from outside the building were connected to conductors running to switchgear and other equipment in the building. During the fire, the junction box and both the upstream and downstream conductors were badly damaged. The conductors that entered the building from outside through conduits buried beneath the sidewalk were damaged and melted in place, rendering the old conduits useless.

After the fire, it was necessary to restore electricity to the Everett Building both on a temporary basis and more permanently. A third party, Thompson Electric Company ("Thompson"), was hired to perform work. This work included laying new conduit and conductors running from a manhole on Market Street outside the building into the building.

Thompson subsequently laid new conduit and pulled new electrical conductors form the manhole into the building. These conductors were connected to new electrical equipment such as switchgear and electrical cabinetry in the building to feed the downstream meters and fixtures within the Everett Building.

Six months after the fire, in May 2017, significant water condensation appeared within the new electrical cabinets and troughs in the basement of the Everett Building. Ohio Edison participated with the relevant parties in an investigation to determine the cause of this condensation. An outside engineering company undertook an inspection and investigation of the situation and determined that when Thompson installed the new conduit under the sidewalk, it failed to use expandable foam or another method to seal the ends of the new conduits. As such, air (including moist air) was free to migrate into the conduits. The engineer concluded that the new conduits' proximity to steam pipes under the sidewalk could lead to a heating/cooling effect,

allowing migrated water vapor to condense once it reached the cooler basement. Ultimately, some of the new equipment was replaced and conduits were sealed with foam.

Ohio Edison anticipates that Frankenmuth will seek to introduce evidence concerning moisture in the new conduits installed after the fire to "reverse engineer a theory of liability against Ohio Edison for the December 12 fire." (Doc. 25-1, p. 3.) Indeed, the only dispute between the parties' experts regarding the cause of the fire is whether the fire was more likely caused by a physical change to or around the box caused by water emanating from the basement walls, ceiling and overall environment (as Ohio Edison contends), or water that had run into the box from conduits outside the building, causing the power supply line wiring and connections in the power tap box to become worn and frayed, resulting in an electrical arcing fault and the ensuing fire (as Frankenmuth contends).

Ohio Edison now seeks an order excluding evidence of problems with the conduits installed after the fire. Ohio Edison argues that introduction of such evidence would be inappropriate (1) under Federal Rule of Evidence 407 as a subsequent remedial measure, and (2) under Federal Rule of Evidence 403 as more prejudicial than probative. The Court now turns to the merits of that motion.

## II. **LEGAL STANDARD**

Federal Rule of Evidence 407 addresses the admissibility of subsequent remedial measures and provides that:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
> - negligence;
> - culpable conduct;
> - a defect in a product or its design; or

3

> • a need for a warning or instruction.
>
> But the court may admit this evidence for another purpose, such as impeachment or--if disputed--proving ownership, control, or the feasibility of precautionary measures.

Fed. R. Evid. 407.

Federal Rule of Evidence 403 addresses circumstances under which the Court may exclude relevant evidence. Rule 403 states, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### III.   DISCUSSION

In its motion in limine, Ohio Edison argues that allowing evidence concerning post-fire repairs would "erode the purpose of Rule 407," and that such evidence may not be used to show pre-fire negligence on behalf of Ohio Edison. (*See* Doc. 25-1, pp. 4, 5.) Ohio Edison states that, "The fact that the third-party contractor apparently failed to seal the ends of the *new* conduits as part of the repair – essentially as part of the repair – does nothing to prove how the December 12, 2016 fire occurred." (*Id.*, p. 5.) Ohio Edison further argues that allowing evidence of ongoing efforts to repair would provide a strong disincentive to parties like Ohio Edison or Thompson to try to cooperate in repairs of fire scenes.

Ohio Edison also contends that allowing evidence regarding the May 2017 moisture issue would be prejudicial and confuse the jury, and thus such evidence should be excluded under Rule 403. According to Ohio Edison, the fact that error was allegedly made when the new conductors were installed months after the fire is only going to confuse the jury into falsely suspecting that there necessarily was a similar problem prior to the fire. (*Id.*, p. 6.) Ohio Edison argues that the

jury is likely to be confused if it has to keep straight pre and post-fire photographs and two sets of testimony about "conduits," "conductors," and moisture. (*Id.*)  According to Ohio Edison, "any failure by Thompson to install the new conduit properly is not probative of whether 40 or 50 years ago, someone (the then-owner of the building, Ohio Edison or someone else – this fact is unknown) installed the pre-fire conduits improperly." (*Id.*).

In its opposition, Frankenmuth argues that, although evidence of post-fire repairs involving the conduits is not admissible to prove negligence, such evidence is explicitly admissible under Rule 407 to prove ownership and control of certain electrical equipment, wiring, and connections within the Everett Building.  Frankenmuth states that "Ohio Edison incorrectly suggests that Plaintiff's insured [Pointe View], through the Everett Building management, and its repair contractor Taylor Construction, were involved with all aspects of both the replacement of the conduit which contained the secondary power supply lines, and the subsequent connection of these power supply lines inside of a preplacement junction box in the basement of the Everett Building after the fire." (Doc. 29, p. 2.)  Frankenmuth contends that Ohio Edison "does so in an attempt to suggest that [Pointe View] was responsible for this aspect of the electrical service to the building," a fact that Frankenmuth disputes. (*Id*.)  Frankenmuth takes the position that evidence about post-accident repair, restoration, and remediation work is critical to establish that Ohio Edison owned and exercised control over the power tap box and the wiring and connections within it.  Frankenmuth does not address Ohio Edison's argument for exclusion of evidence under Federal Rule of Evidence 403.

The Court agrees with Frankenmuth that evidence of post-fire repairs is admissible under Rule 407 (1) to the extent that Ohio Edison actually denies ownership or control over the power tap box and connections within it, and (2) evidence of post-fire repairs rebuts Ohio Edison's

claim of lack of ownership or control over the equipment. Accordingly, Ohio Edison's motion in limine is denied to the extent that Frankenmuth may rebut denials of ownership and control by introducing evidence surrounding the fact that certain parties were hired and repairs were conducted (by Ohio Edison and/or others) in order to restore electricity to the Everett Building.

Nonetheless, the Court agrees with Ohio Edison that evidence specifically of moisture in the new conduits in May 2017, after the fire took place, is more prejudicial than probative. Evidence that a contractor hired after the fire laid new conduit, but failed to seal the conduit, thus allowing water intrusion, has little or no probative value regarding whether the conduits in place at the time of the fire were installed improperly 40 or 50 years earlier. Moreover, the introduction of evidence of moisture in the new conduits carries the real possibility of confusing the jury into thinking that a similar problem necessarily existed prior to the fire. Accordingly, although Frankenmuth may attempt to show ownership and control of equipment through introduction of evidence that work was done to restore electricity to the Everett Building after the fire, Frankenmuth may not introduce specific evidence that the new conduit laid after the fire experienced moisture intrusion. Under Federal Rule of Evidence 403, such evidence shall be excluded as more prejudicial than probative.

## IV. **CONCLUSION**

For the reasons stated, Frankenmuth's motion in limine to exclude evidence of post-fire repairs (Doc. 25) is DENIED IN PART and GRANTED IN PART. The motion is denied to the extent that evidence of post-fire work to restore electricity to the Everett Building is admissible under Federal Rule of Evidence 407 to rebut any contention that Ohio Edison did not own and/or exercise control over certain conduits or wiring within the junction box. However, the motion is

granted to the extent that specific evidence of moisture within new conduits laid after the fire is excluded under Federal Rule of Evidence 403 as more prejudicial than probative.

**IT IS SO ORDERED.**

                                            __s/John R. Adams_____
                                            JOHN R. ADAMS
                                            UNITED STATES DISTRICT JUDGE

**DATED**: ___10/9/18_____